FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 25, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEILANI B.,[1] | No. 1:19-cv-03189-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 14, and denies Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 24, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of March 24, 2016. Tr. 182-90. The application was denied initially, and on reconsideration. Tr. 99-104; Tr. 108-14. Plaintiff appeared before an administrative law judge (ALJ) on July 17, 2018. Tr. 35-65. On August 29, 2018, the ALJ denied Plaintiff's claim. Tr. 12-34.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 24, 2016. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease- lumbar spine, fibromyalgia, depressive disorder, anxiety disorder, post-traumatic stress disorder, personality disorder, and marijuana use disorder. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can never crawl or climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and climb ramps or stairs; she should avoid all exposure to unprotected heights and excessive vibration; she would be limited to simple, routine tasks; and she would be limited to superficial and occasional interaction with the public and co-workers.

Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 28.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cafeteria attendant, housekeeping cleaner, and agricultural produce sorter.  Tr. 29.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision.  *Id.*

On June 16, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

    1. Whether the ALJ properly evaluated the medical opinion evidence; and

    2. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 14 at 2.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in rejecting the opinions of Beth McManis, ARNP, William Drenguis, M.D., R.A. Cline, Psy.D., and Alexander Patterson, Psy.D. ECF No. 14 at 5-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[2]  However, an ALJ

is required to consider evidence from non-acceptable medical sources, such as

therapists.  20 C.F.R. § 416.913(d).[3]  An ALJ may reject the opinion of a non-

acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763

F.3d at 1161.

### 1. Ms. McManis

Ms. McManis, a treating nurse practitioner, diagnosed Plaintiff with leg

pain, pre-diabetes, fibromyalgia, obesity, depression, elevated blood pressure,

insomnia, anxiety, chronic pain, low back pain, obstructive sleep apnea,

hypoxemia, osteoarthritis, occipital neuralgia, post-surgical syndrome in the

lumbar region, lumbar radiculopathy, long-term opioid use, and noted Plaintiff is a

smoker.  Tr. 619-20.  She opined Plaintiff needs to lie down for a few hours to all

day due to fatigue; Plaintiff's condition would deteriorate if she had to work on a

---

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 416.902 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time of Plaintiff's filing.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.927(f) for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time of Plaintiff's filing.

ORDER - 10

continuous and regular basis; she would miss four or more days per month; Plaintiff cannot sit or stand for long periods; and Plaintiff's immediate prognosis is poor, with the long-term prognosis dependent on further assessment. Tr. 619-21. Ms. McManis stated Plaintiff's "disability should be based on back injury [and] pain. Disability would not be recommended for fibromyalgia." Tr. 621. The ALJ gave Ms. McManis' opinion little weight. Tr. 25. As she is a non-acceptable medical source, the ALJ was required to give germane reasons to reject Ms. McManis' opinion. *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Ms. McManis is not an acceptable medical source. Tr. 25. The ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. § 416.927 (2012). Although an individual's status as a medically acceptable source may impact the amount of deference the ALJ gives to an opinion, the ALJ may not reject an opinion as to a claimant's limitations because the opinion comes from a non-acceptable medical source. *Id.* Here, the ALJ gave little weight to Ms. McManis' opinion because she is not an acceptable medical source, among other reasons. Tr. 25. As the ALJ considered the weight of the opinion rather than rejecting it due to Ms. McManis' status as a non-acceptable source, this was a proper consideration. Further, any error would be harmless because the ALJ gave another germane reason to reject Ms. McManis' opinion. *See Molina,* 674 F.3d at 1111.

Second, the ALJ discounted Ms. McManis' opinion finding that it is inconsistent with the objective evidence. Tr. 25. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ found Ms. McManis' opinion inconsistent with the objective findings from Dr. Wagner and Dr. Drenguis' examinations. Tr. 25. During Dr. Drenguis' exam, he noted Plaintiff appeared uncomfortable, shifting positions during the exam, and Plaintiff reported discomfort during the exam. Tr. 430-31. Plaintiff had sixteen tender points, as well as tenderness in the lumbar spine and bilateral paravertebral muscle spasms, though Plaintiff's strength, gait, range of motion and straight leg raise test were normal. Tr. 430-32. During Dr. Wagner's exam, Plaintiff had normal gait, strength, generally normal range of motion and sensation, and a positive supine straight leg raise, multiple positive trigger points, and only trace deep tendon reflexes. Tr. 425-26. Ms. McManis noted that the objective evidence of Plaintiff's conditions includes 16 positive tender points, a BMI of 34.21, O2 saturation of 98 percent, Plaintiff walks favoring her left limb, and she has decreased sensitivity to light touch on her left calf, thigh and forearm. Tr. 619. She also noted Plaintiff has pain, which can be exacerbated by her depression and anxiety, fatigue, and numbness and tingling. *Id.*

Fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory test to confirm the diagnosis.'" *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). While Plaintiff argues the treatment records provide objective evidence of Plaintiff's fibromyalgia symptoms, which support Ms. McManis' opinion, ECF No. 14 at 7-8, Ms. McManis' opinion is not based entirely on Plaintiff's fibromyalgia, and she explicitly stated Plaintiff should be considered for disability based on her spinal condition rather than fibromyalgia, Tr. 619-21. The evidence cited by the ALJ conflicts with Ms. McManis' statement. The examinations demonstrate normal sensation and gait, while Ms. McManis stated Plaintiff had abnormal sensation and gait. Tr. 425-26, 619-21. Additionally, the ALJ found the records do not contain objective evidence of Plaintiff's reported level of fatigue. Tr. 24. Although Plaintiff reported fatigue at the exams, she also reported being able to independently handle her daily needs, including personal care, cooking, cleaning, shopping, driving and walking for exercise, Tr. 423, 424, 429.

Plaintiff points to evidence of appointments where she had an abnormal gait, decreased sensation, weakness, and pain. ECF No. 14 at 8. However, there are multiple appointments where Plaintiff had a normal gait, sensation, and strength. Tr. 311, 365, 400, 402, 419, 425, 431, 443, 673, 677, 683. The ALJ reasonably

found the objective evidence and record as a whole are inconsistent with Ms. McManis' opinion, therefore this was a germane reason to reject the opinion.

Third, the ALJ found a portion of Ms. McManis' opinion concerned Plaintiff's eligibility for disability, which is an issue reserved to the Commissioner. Tr. 25. A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance." 20 C.F.R. § 416.927(d). Nevertheless, the ALJ is required to consider medical source opinions about any issue, including issues reserved to the Commissioner, by evaluating the opinion in light of the evidence in the record and applying the applicable 20 C.F.R. § 416.927(d) factors. SSR 96-5p at *2-3. Ms. McManis opined a finding of disability should be based on Plaintiff's back impairment. Tr. 621. The ALJ considered Ms. McManis' opinion as a whole, and as discussed *supra*, rationally found Ms. McManis' opined limitations are not supported by the objective evidence. As such, the ALJ appropriately rejected Ms. McManis' opinion for a germane reason.

### 2. Dr. Drenguis

Dr. Drenguis, a consultative examiner, diagnosed Plaintiff with low back pain with failed laminectomy syndrome and fibromyalgia. Tr. 432. He opined Plaintiff can stand/walk at least two hours in an eight-hour workday; sit about six hours in a workday; she does not require an assistive device; she can lift/carry 20

pounds occasionally and 10 pounds frequently; she can occasionally engage in postural and manipulative activities; and she has no environmental limitations.  Tr. 428-33.  The ALJ gave Dr. Drenguis' opinion partial weight.  Tr. 24.  As Dr. Drenguis' opinion is contradicted by Dr. Wagner, Tr. 427, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ reasoned Dr. Drenguis' opinion regarding Plaintiff's ability to stand and walk is inconsistent with his examination.  Tr. 24.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Dr. Drenguis opined Plaintiff could stand/walk at least two hours, which suggests she could not stand/walk for six hours or more.  Tr. 432.  At the examination, Plaintiff had normal strength, sensation, gait, station, and coordination.  Tr. 24, 431-32.  She also had normal range of motion and reflexes and was able to get on and off the exam table and remove her shoes and socks without assistance.  Tr. 430-32.  Plaintiff argues Dr. Drenguis' opinion was based on her pain resulting from her failed laminectomy

ORDER - 15

syndrome and fibromyalgia, and thus the objective evidence does not undermine Dr. Drenguis opinion. ECF No. 14 at 10. However, Plaintiff's ability to engage in all of the physical activities without limitations, despite her pain, is inconsistent with Dr. Drenguis' opinion. This was a specific and legitimate reason to reject Dr. Drenguis' opinion regarding Plaintiff's ability to stand/walk.

Second, the ALJ reasoned Dr. Drenguis' opinion regarding Plaintiff's ability to stand and walk is inconsistent with the objective evidence from Dr. Wagner's examination. Tr. 24. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. At Dr. Wagner's examination, Plaintiff had normal coordination, station, gait, strength and sensation. Tr. 24, 425-26. Plaintiff also had generally normal range of motion. Tr. 426. Based on his examination, which had similar results to Dr. Drenguis' examination, Dr. Wagner opined Plaintiff could stand/walk up to six hours in a day. Tr. 24, 427. As discussed *supra,* Plaintiff had generally normal physical examinations at multiple other examinations as well, even during times she reported significant pain symptoms. The ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. Drenguis' opinion regarding Plaintiff's ability to stand and walk.

Plaintiff contends that Dr. Drenguis assessed Plaintiff with manipulative limitations, which the ALJ failed to evaluate and did not incorporate into the RFC. ECF No. 14 at 12.  While Defendant argues the ALJ properly addressed Dr. Drenguis' opinion regarding manipulative limitations by addressing the inconsistency between Dr. Drenguis' opinion and Dr. Wagner's, the ALJ did not address Dr. Drenguis' opinion that Plaintiff could only occasionally reach overhead and forward, and frequently finger, handle, and feel.  ECF No. 16 at 11-2.  The ALJ explicitly stated he gave partial weight to Dr. Drenguis' opinion because of his in-person evaluation and the general consistency of his conclusions with the objective findings but found there was not medical support from Dr. Drenguis' exam nor Dr. Wagner's exam for Dr. Drenguis' opinion on Plaintiff's "ability to stand and walk," and did not articulate a  reason for rejecting Dr. Drenguis' opinion on Plaintiff's manipulative limitations.  Tr. 24.  The ALJ's decision does not contain an analysis of Plaintiff's ability to reach or handle.

Plaintiff argues this was harmful error because the jobs listed at step five require constant handling or frequent reaching.  ECF No. 14 at 12.  Defendant did not set forth any arguments as to why this error would be harmless.  While Plaintiff did not question the vocational expert regarding the handling and reaching requirements for the jobs the vocational expert gave in response to the ALJ's hypothetical, Plaintiff's argument relies on the characteristics of the job and not the

numbers, thus the argument was not waived.  *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (holding that when "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel.").  However, as the issue was not addressed at the hearing, no expert testimony is available to address the issue.

Plaintiff provided data for the three jobs from Job Browser Pro, a computer system that provides data on occupations.  Exhibit 1 to ECF 14.  The regulations allow for administrative notice to be taken of reliable information from governmental and other publications, such as the Dictionary of Occupational Titles, though Job Browser Pro is not one of the specifically listed sources.  *Shaibi*, 883 F.3d at 1108; 20 C.F.R. § 416.966.  A vocational expert's testimony is generally relied on to determine a claimant's ability to perform an occupation.  20 C.F.R. § 416.966(e).

On remand, the ALJ is directed to reconsider Dr. Drenguis' opinion regarding Plaintiff's manipulative limitations and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.  After reconsidering the RFC, if necessary, the ALJ should call a vocational expert to determine Plaintiff's ability to perform other work.

### 3. Dr. Patterson

Dr. Patterson, a consultative examiner, diagnosed Plaintiff with major depressive disorder and panic disorder with agoraphobia.  Tr. 437.  He opined Plaintiff would have difficulty performing detailed and complex tasks, interacting with coworkers and the public, completing a normal workday/workweek without interruptions from psychiatric symptoms, and dealing with usual stress encountered in the workplace; and she would not have difficulty managing her own funds, performing simple and repetitive tasks, performing work activities without special/additional instructions, accepting instructions from supervisors, and maintaining regular attendance.  Tr. 437-38.  The ALJ gave Dr. Patterson's opinion little weight.  Tr. 27.  As Dr. Patterson's opinion is contradicted by Dr. Zhang, Tr. 420-21, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.  *See Bayliss*, 427 F.3d at 1216.

The ALJ found portions of Dr. Patterson's opinion were unclear.  Tr. 27.  A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported.  *Bray*, 554 F.3d at 1228.  Furthermore, an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."  *See Morgan v. Comm'r of Soc. Sec. Admin,* 169 F.3d 595, 601 (9th Cir. 1999).  Dr. Patterson's opinion does not

contain any quantifiable limitations. He opined Plaintiff "would have difficulties" in several areas of functioning but did not indicate the degree or frequency of the difficulties. However, the ALJ gave more weight to Dr. Flanagan's opinion, though the ALJ stated "Dr. Flanagan's opinion is as non-descriptive as Dr. Patterson's." Tr. 27. The ALJ did not give any explanation for affording more weight to Dr. Flanagan's opinion over Dr. Patterson's, when they were equally non-descriptive. Defendant argues the ALJ did not give Dr. Flanagan's opinion more weight than Dr. Patterson's, however the ALJ gave Dr. Patterson's opinion "little" weight while giving Dr. Flanagan's opinion "some" weight, indicating Dr. Flanagan's opinion was given more weight. ECF No. 16 at 14; Tr. 27-28. As such, the ALJ erred by not giving specific and legitimate reasons to reject Dr. Patterson's opinion. Defendant does not set forth any arguments as to how this error may be harmless. Thus, remand is warranted.

On remand, the ALJ is instructed to reconsider Dr. Patterson's opinion and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.

### 4. Dr. Cline

Dr. Cline, a DSHS examiner, diagnosed Plaintiff with a provisional but primary diagnosis of borderline personality disorder, marijuana use disorder, alcohol use disorder in reported early remission, methamphetamine use disorder in

ORDER - 20

reported remission, PTSD, unspecified anxiety disorder with features of

agoraphobia and panic disorder (rule out substance induced/exacerbated),

unspecified depressive disorder (rule out substance induced/exacerbated), and a

rule out diagnosis of somatic symptom disorder.  Tr. 470.  Dr. Cline opined

Plaintiff has no to mild limitations in her ability to understand, remember and

persist in tasks by following very short and simple instructions; understand,

remember and persist in tasks by following details instructions; learn new tasks;

perform routine tasks without special supervision; adapt to changes in a routine

work setting; and ask simple questions or request assistance; moderate limitations

in her ability to perform activities within a schedule, maintain regular attendance,

and be punctual within customary tolerances without special supervision; make

simple work-related decision; be aware of normal hazards and take appropriate

precautions; communicate and perform effectively in a work setting; and complete

a normal workday/workweek without interruptions from psychologically-based

symptoms; and marked limitations in her ability to maintain appropriate behavior

in a work setting; and set realistic goals and plan independently.  Tr. 471.  She

opined Plaintiff's impairments overall had a marked severity rating.  *Id.*  The ALJ

gave Dr. Cline's opinion partial weight.  Tr. 26.  As Dr. Cline's opinion is

contradicted by Dr. Zhang, Tr. 420-21, the ALJ was required to give specific and

legitimate reasons, supported by substantial evidence, to reject the opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Plaintiff's marijuana use and Dr. Cline's assessment that it would be difficult to differentiate between the symptoms caused by substance abuse or by her underlying psychological problems detracted from the weight afforded to Dr. Cline's opinion. Tr. 26. An ALJ may discount a medical opinion that does not consider a claimant's ongoing substance abuse, *Cothrell v. Berryhill*, 742 Fed. App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion); *Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016) (unpublished opinion). Here, Dr. Cline had knowledge of Plaintiff's substance use and opined Plaintiff's impairments are not primarily the result of substances use, and her current impairments would persist following 60 days of sobriety. Tr. 472. At the time of Dr. Cline's exam, Plaintiff reported daily use of marijuana and a history of other substance abuse. Tr. 470. Dr. Cline noted that her ability to diagnose Plaintiff was compromised by the substance use as such substance abuse would make it difficult to assess Plaintiff's mental impairments. *See, e.g.*, Tr. 468 ("[D]ue to her long and fairly significant substance abuse history, it will be difficult to separate out what symptoms are caused by her substance abuse and which ones are related to underlying psychological problems."); Tr. 468 ("…though she appears to have had significant episodes of depression in the past

these may have been strongly influenced by her substance use."); Tr. 470 (noting Plaintiff described depressive episodes where Plaintiff did not get out of bed, "but these were concurrent with significant substance abuse, making differentiation difficult."); Tr. 472 (commenting that although Plaintiff's impairments would persist after 60 days of sobriety, "[t]hough her ongoing marijuana use may well be causing rebound anxiety and exacerbating her depressive symptoms."); Tr. 472 ("A thorough [chemical dependency] assessment would also be helpful as she should seek an extended period of complete abstinence to help clarify her true diagnoses."). This was a specific and legitimate reason to discount her opinion.

Second, the ALJ found Dr. Cline's opinion is internally inconsistent. Tr. 26. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875. Defendant presents no argument in opposition to Plaintiff's contention the ALJ improperly found Dr. Cline's opinion internally consistent. *See* ECF No. 18 at 12-13.

Third, the ALJ found Dr. Cline's opinion regarding more significant limitations inconsistent with the record as a whole. Tr. 26. An ALJ may reject

limitations "unsupported by the record as a whole." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). The specific and legitimate standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("consider[ing] the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five" because "it is proper to read the ALJ's decision as a whole" and "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the

appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing"). Defendant did not set forth any arguments regarding this issue.

The ALJ stated some of Dr. Cline's ratings were inconsistent with the record as a whole. Tr. 26. However, the ALJ did not cite to any evidence that is inconsistent with Dr. Cline's opinion, nor explain specifically which ratings were inconsistent with the evidence. Reading the ALJ's decision as a whole, the ALJ did not sufficiently address the record in a way that demonstrates Dr. Cline's opinion is inconsistent with the record as a whole. Dr. Cline opined Plaintiff had marked limitations in her ability to maintain appropriate behavior and set realistic goals independently, and moderate limitations in working within a schedule, making simple decisions, handling hazards, communicating and performing effectively in a work setting, and found Plaintiff had an overall marked limitation. Tr. 471. The ALJ's analysis of the record does not address any evidence regarding Plaintiff's ability to maintain appropriate behavior or set realistic goals independently. Thus, the ALJ erred in finding Dr. Cline's opinion inconsistent with the longitudinal record.

Fourth, the ALJ reasoned DSHS' regulations differ from Social Security's regulations. Tr. 26. Although 20 C.F.R. § 416.904 provides that a state disability decision is not binding on the Commissioner, the ALJ must still evaluate each

medical source opinion and consider the supporting evidence underlying the decision.  20 C.F.R. §§ 416.913(a), 416.927(b), (c).  Moreover, the ALJ did not evaluate how Washington state's DSHS requirements differ from the Social Security disability requirements, of particular importance given that WAC 182-512-0050 relies on the Social Security five-step analytic framework.  *See Holbrook v. Berryhill*, No. 15-35552, 696 F. App'x 846 (9th Cir. Aug. 30, 2017) (unpublished opinion) (reversing the ALJ for failing to adequately consider a Washington DSHS decision finding the claimant disabled).

Defendant does not set forth any arguments regarding this issue.  The fact that there are differences between the DSHS requirements and Social Security's regulations alone is not a specific and legitimate reason to reject Dr. Cline's opinion.  While the ALJ gave a specific and legitimate reason to reject Dr. Cline's opinion, the majority of the analysis was in error.  Because the case is being remanded on other grounds, the ALJ is directed on remand to also reconsider Dr. Cline's opinion and incorporate the limitations in to the RFC, or give specific and legitimate reasons, supported by substantial evidence, to reject the opinion, and to perform a DAA analysis should one be necessary.  Further, the ALJ is directed to obtain testimony from a psychological expert at the hearing, to address Plaintiff's impairments, limitations, and whether Plaintiff's substance use is a material issue.

## B. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons to discredit her symptom claims. ECF No. 14 at 16-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[4] SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

---

[4] At the time of the ALJ's decision, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).

rejection." *Ghanim,* 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c). The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr.  22.

First, the ALJ found the objective evidence did not fully support Plaintiff's claims.  Tr. 22, 24, 25.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9thCir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Regarding her physical symptoms, in 2016, Ms. Chan found Plaintiff's fibromyalgia was stable.  Tr. 22 (citing Tr. 407).  Dr. Wagner's July 2016 consultative exam found Plaintiff had generally normal findings, including normal gait, strength, and sensation.  Tr. 23 (citing Tr. 424-26).  Treatment records

demonstrate Plaintiff had an abnormal gait and sensation at some appointments. Tr. 23 (citing Tr. 465); Tr. 625, 633. At Dr. Drenguis' consultative exam, Plaintiff again had generally normal findings, including normal gait, range of motion, strength, and sensation. Tr. 23-24 (citing Tr. 432-33). Although Plaintiff argues the ALJ improperly considered the objective evidence as he did not consider evidence of her fibromyalgia symptoms, ECF No. 14 at 17-18, as discussed *supra,* the objective evidence demonstrates many occasions where Plaintiff had normal physical findings, which is inconsistent with her reported physical limitations.

Regarding her mental health symptoms, the ALJ found Plaintiff did not continue taking medications for periods longer than one to two months, and she had minimal dosage increases. Tr. 27 (citing Tr. 463). Dr. Espirtu opined Plaintiff should return to work in 2012 as it would help her psychologically, and Dr. Zhang opined in 2016 that Plaintiff had only mild to moderate limitations due to her mental health symptoms. Tr. 27 (citing Tr. 420-21, 461). Plaintiff argues that the evidence supports Plaintiff's claims but cites primarily to treatment records containing generally normal exams and Plaintiff's self-report. ECF No. 14 at 20; Tr. 498 (normal speech, psychomotor activity, and cooperation but agitated, anxious, sad, labile, and complains of issues with attention and memory); Tr. 503 (self-report of concentration, memory, and social difficulties); Tr. 507, 515-16, 523-24 (normal speech, mood, affect, memory, and cognition, but impaired

attention, tangential but logical thoughts, and fair insight/judgment). Plaintiff's

treatment records overall demonstrate some ongoing symptoms, but also

demonstrate mostly normal mental status exam results. This was a clear and

convincing reason, coupled with the other reasons identified by the ALJ, to reject

Plaintiff's symptom claims.

Second, the ALJ found Plaintiff had improvement in her symptoms with

treatment. Tr. 22, 24, 27. The effectiveness of treatment is a relevant factor in

determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *see*

*Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006);

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to

treatment can undermine a claimant's complaints of debilitating pain or other

severe limitations).

Plaintiff reported her pain was "mostly controlled" with Tramadol in 2015.

Tr. 22, 345. In 2018, Plaintiff reported she was "doing well" on her pain

medication regimen. Tr. 24 (citing Tr. 624). Plaintiff reported her mental health

medications were not entirely effective in 2017, but after counseling and a

medication dosage increase, Plaintiff reported her mood was less labile, and her

sleep had improved. Tr. 27 (citing Tr. 518, 521, 526). Plaintiff contends the ALJ

erred in his analysis of Plaintiff's improvement with treatment, because records

demonstrate she had periods of more significant symptoms. ECF No. 14 at 18.

However, the records demonstrate Plaintiff had improvement in several of symptoms when she sought consistent treatment. This was a clear and convincing reason to reject Plaintiff's symptom claims.

Third, the ALJ found Plaintiff was non-complaint with recommended treatment. Tr. 27. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure. *Orn*, 495 F.3d at 638. Plaintiff initiated counseling after receiving a referral but discontinued it after one session. Tr. 27 (citing Tr. 530, 534). Plaintiff was also referred to an orthopedist but did not follow through with the referral. Tr. 23 (citing Tr. 603). Plaintiff argues she requested a female counselor due to her mental health symptoms and did not return to counseling because she had a male counselor, and the ALJ should have properly considered her reason for not seeking care. ECF No. 14 at 21. However, the record does not provide a reason why Plaintiff requested a female counselor, nor why she never sought additional care. Tr. 522, 534. Plaintiff does not offer a reason as to why she did not follow through on the orthopedic referral. This was a clear and convincing reason to reject Plaintiff's symptom claims.

Fourth, the ALJ considered Plaintiff's activities of daily living. Tr. 23, 25. The ALJ may consider a claimant's activities that undermine reported symptoms.

ORDER - 32

*Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff reported she could drive and go out alone, socialize occasionally, cook, clean, shop, do laundry and dishes, perform other activities without assistance, and walk for exercise. Tr. 23, 25 (citing Tr. 418-19, 424, 430). While the ALJ did not provide any analysis of how the activities are inconsistent with Plaintiff's symptom claims, any error would be harmless, as the ALJ gave other clear and convincing reasons to reject Plaintiff's symptom complaints. *See Molina,* 674 F.3d at 1111. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 33

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 25, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 34